**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|   |   |
|---|---|
| Joseph A. Barker, Regional Director of Region 13 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board | )<br>)<br>)<br>)<br>) |
| Petitioner, | ) **No. 08 CV 3412** |
| v. | ) Judge Anderson |
|   | ) Magistrate Judge Cole |
| Laborers' Local 118 | )<br>) |
| Respondent. | ) |

**DEFENDANT, LABORERS' LOCAL 118 RESPONSE TO THE NLRB PETITION
FOR TEMPORARY INJUNCTION UNDER SECTION 10(l) OF THE
<u>NATIONAL LABOR RELATIONS ACT</u>**

**NOW COMES** Laborers' Local 118 by and through their attorney, Marc M. Pekay, and files this answer to the Petition for Temporary Injunction under Section 10(l) of the National Labor Relations Act.

1) Petitioner is the Regional Director for Region 13 of the Board, an agency of the United States Government, and files this petition for and on behalf of the Board.

**ANSWER:** Respondent (hereinafter called "Laborers' Local 118" or "Union"), admits the allegations in paragraph 1.

2) Jurisdiction of the Court is invoked pursuant to Section 10(1) of the Act. Countryside is engaged in business operations within this judicial district.

**ANSWER:** Local 118 admits the allegations in paragraph 2.

3) About May 19, 2008, Countryside Industries (hereinafter "Countryside") filed with the Board an unfair labor practice charge in Case 13-CD-773 against Respondent. A copy of this charge is marked as Exhibit 1 and attached hereto.

**ANSWER:** **Laborers' Local 118 admits the allegations in paragraph 3.**

4) The charge was referred to the Petitioner as Regional Director of Region 13 of the Board.

**ANSWER:** **Laborers' Local 118 admits the allegations in paragraph 4.**

5) The charge alleges that Respondent has engaged in unfair labor practices within the meaning of Section 8(b)(4)(i)(ii)(D) of the Act.

**ANSWER:** **Laborers' Local 118 admits the allegations in paragraph 5. However, Laborers' Local 118 denies that it has engaged in any unfair labor practice pursuant to §8(b)(4)(i)(ii)(D) of the Act.**

6) Petitioner has reasonable cause to believe that the charge is true. Petitioner believes there is a likelihood of success on the merits of the charge pending before e Board and that substantial and irreparable harm to the Charging Party will be avoidable absent this Court granting Petitioner's Petition for temporary injunctive relief. Specifically, Petitioner believes that Respondent has engaged in the following acts of conduct in violation of Section 8(b)(4)(i)(ii)(D) of the Act:

**ANSWER:** **Laborers' Local 118 denies the allegations in paragraph 6.**

(a) Respondent exists for the purpose of dealing with employers concerning labor disputes and in bargaining collectively with employers regarding wages, rates of pay, hours of employment and other terms and conditions of employment for employees, either directly or through its local unions.

**ANSWER: Laborers' Local 118 admits that it represents employees and bargaining with employers regarding wages, hours and working conditions, but denies that it is "through its local unions" since Local 118 is a local union.**

(b) Respondent is now, and has been at all material times herein, a labor organization within the meaning of Section 2(5) of the Act.

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (b).**

(c)  At all material times, Martin Flanagan held the position of Respondent's President/Business Manager, and has been an agent of Respondent within the meaning of Section 2(13) of the Act:

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (c).**

(d)  At all material times, Countryside, an Illinois corporation with an office and place of business in Wauconda, Illinois, has been engaged in the business of landscaping services to clients.

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (d).**

(e)  During the past calendar year, a representative period, Countryside, in conducting its business operations, has purchased and received goods and materials valued in excess of $50,000 from entities located outside of the State of Illinois.

**ANSWER:  Respondent lacks information regarding this and, therefore, denies the allegations.**

(f)  Countryside is now, and has been at all material times herein, an employer engaged in commerce within the meaning of Sections 2(2), (6), and (7) of the Act.

**ANSWER:  Laborers' Local 118 admits the allegations in paragraph (f).**

(g)  At all material times, The Arboretum has been the owner of a job site of approximately 80 acres in South Barrington, Illinois, which is currently being developed into a retail development, including some 20 buildings such as movie theaters, restaurants, and retail operations.

**ANSWER:  The Union admits that a place is being built in South Barrington, but lacks information on the remaining allegations and,**

3

therefore, denies it.

(h) At all material times, Ragnar Benson has been operating as the general contractor of The Arboretum job site and in that capacity, has contracted with various construction and trades entities, including Countryside, to complete work on the property.

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (h).**

(i) Rangar Benson currently has a collective-bargaining agreement with Respondent, which is effective by its terms from June 1, 2006, to May 31,2010.

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (i).**

(j) Countryside currently has a collective-bargaining agreement with the International Union of Operating Engineers, Local 150/International Brotherhood of Teamsters, Local 703, which is effective by its terms from January 1,2007, to December 31,2009.

**ANSWER: Respondent lacks information on this allegation and, therefore, denies paragraph (j).**

(k) At all material times, Ragnar Benson contracted with Countryside to complete landscaping construction services, irrigation and well installation only.

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (k).**

(l) At all material times, The Arboretum entered into an oral agreement with Countryside to complete the installation of brick pavers on the Arboretum property.

**ANSWER: Local 118 lacks information on this allegation and, therefore, denies it.**

(m) By letter dated March 24,2008, Respondent made a request to Ragnar Benson to be awarded the installation of brick pavers work and all clean up work and made a demand that Countryside be removed from The Arboretum project. A copy of this letter is attached as Exhibit 2.

4

**ANSWER:   Local 118 admits that there was a letter sent as Exhibit 2, but denies the remaining allegations in this paragraph.**

(n)   By letter dated April 18, 2008, Respondent, through its counsel, expressed that it was "concerned that your company may be planning to subcontract certain covered work to a non-signatory entity called Countryside Landscaping, and perhaps to other entities." A copy of this letter is attached as Exhibit 3.

**ANSWER:   Local 118 admits the letter dated April 18, 2008, but denies the remaining portion of paragraph (n).**

(o)   About April 22, 2008, Respondent filed a grievance against Ragnar Benson alleging a violation of a provision in the collective-bargaining agreement referred to in paragraph 6(i) above regarding subcontracting and sought the removal of Countryside and payment in lieu of work performed by Countryside for brick paver installation. A copy of this grievance is attached as Exhibit 4.

**ANSWER:   Local 118 admits that it filed a grievance, but denies the remaining allegation.**

(p)   By letter dated April 23, 2008, Ragnar Benson notified Respondent that they had not violated their collective-bargaining agreement because they had not entered into a sub-contractual relationship with Countryside to perform the brick paver installation. A copy of this letter is attached as Exhibit 5.

**ANSWER:   Laborers' Local 118 admits the allegations in paragraph (p).**

(q)   On May 14, 2008, Countryside commenced work on the brick paver installation.

**ANSWER:   Laborers' Local 118 admits the allegations in paragraph (q).**

(r)   Despite the information that the grievance referenced above in paragraph 6(n) was not valid because of the absence of any contractual relationship with Countryside and Ragnar Benson over the brick paver installation, Respondent commenced picketing on May 19, 2008, at The Arboretum property. Respondent's picket signs read:

> Employees Country Side Landscape
> Receive Substandard
> Wages and Benefits
> Laborers
> Local #118

**ANSWER:   Laborers' Local 118 denies the allegations in paragraph (r).**

(s)   About May 19, 2008, Countryside was removed by Ragnar Benson from the jobsite so that work could continue uninterrupted by sympathy support for the strike by employees of other contractors at The Arboretum property. This same information was communicated to Respondent via letter from Ragnar Benson dated May 19, 2008. A copy of this letter is attached as Exhibit 6.

**ANSWER:   Local 118 acknowledges that they were informed by Ragnar Benson that Countryside was removed, but denies the remaining allegations.**

(t)   Although picketing has not resumed since about May 19, 2008, Respondent has refused to give assurances to Petitioner that it will not renew its picket line against Countryside should they return to the property to complete work on the brick paver installation.

**ANSWER:   Laborers' Local 118 admits the allegations in paragraph (t).**

(u)   An object of Respondent's conduct as described above in Paragraphs 6(m) through 6(s) has been to force or require the assignment of the work described above in paragraph 6(n) to employees who are members of, or represented by, Respondent.

**ANSWER:   Laborers' Local 118 denies the allegations in paragraph (u).**

(v)   By the acts and conduct described above in Paragraphs 6(m) through 6(s), Respondent has engaged in and has induced and encouraged individuals employed by Countryside and other persons engaged in commerce or in an industry affecting commerce, to engage in a strike or refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on

6

any goods, articles, materials or commodities or to perform services.

**ANSWER: Laborers' Local 118 denies the allegations in paragraph (v).**

(w) By the acts and conduct set forth above in paragraphs 6(m) through 6(s), Respondent has threatened, coerced, and restrained Countryside and other persons engaged in commerce or in industries affecting commerce.

**ANSWER: Laborers' Local 118 denies the allegations in paragraph (w).**

(x) By the acts and conduct described above in paragraphs 6(m) through 6(v), Respondent has been violating Section 8(b)(4)(i)(ii)(D) of the Act and affecting commerce within the meaning of Sections 2(6) and 2(7) of the Act.

**ANSWER: Laborers' Local 118 denies the allegations in paragraph (x).**

(y) The unfair labor practices of Respondent, described above in paragraphs 6(m) through 6(v), have taken place within this judicial district.

**ANSWER: Laborers' Local 118 denies the allegations in paragraph (y).**

(z) A hearing pursuant to Section 10(k) of the Act is scheduled to commence on Tuesday, June 24,2008. This hearing will address the work assignment of the brick paver installation.

**ANSWER: Laborers' Local 118 admits the allegations in paragraph (z).**

7) It is imperative that Countryside return to complete its work on the brick paver installation. However, because Respondent has refused to give assurances that it will not resume picketing, it is anticipated that at that time, Respondent will resume its unlawful picketing activity at The Arboretum site. This harm has the real potential to further halt all construction at the jobsite, thereby incurring additional and significant in monetary losses, such as losses in costs associated with compensating contractors on the site for their lost time. This halting of construction has also caused a loss of reputation to C Countryside, Ragnar Benson, and The Arboretum with the Village of South Barrington. The Village of South Barrington has expressed serious concerns about whether Countryside,

7

Ragnar Benson, and The Arboretum have engaged in improper conduct. ∕ Additionally, approximately 40 current tenants of The Arboretum have been unable to r 10ve goods onto the project to set up retail operations, and The Arboretum may be forced to delay the payment of rent. From a public standpoint, there exists the potential f x losses in sales and property tax revenue due to a delay in the opening of retail stores and delays in the completion of over $4 million dollars worth of road improvement. This, in turn, would cause increases in traffic delays and signal disruptions.

**ANSWER:** **Laborers' Local 118 denies the allegations in paragraph 7.**

8) Respondent's unfair labor practices, as described above in paragraphs 6(m) rough 6(v), have and will continue to irreparably harm the remedial purposes of the Act and the public interest in deterring continued violations.

**ANSWER:** **Laborers' Local 118 denies the allegations in paragraph 8.**

9) There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above in paragraphs 6(m) through 6(v). absent interim relief, the Board will be unable and powerless to make Respondent cease *is* unlawful activities during the pendency of the Board's processes.

**ANSWER:** **Laborers' Local 118 denies the allegations in paragraph 9.**

10) In balancing the equities, the immediate and substantial threat to the collective-bargaining and business relationships of Ragnar Benson, Countryside, and The Arboretum and the myriad other contractors performing work at The Arboretum, to the public interest, and to the policies of the Act clearly outweigh the minimal burden on Respondent of providing assurances that it will not resume its picketing. Such a requirement is not unduly burdensome on Respondent.

**ANSWER:** **Laborers' Local 118 denies the allegations in paragraph 10.**

11) Upon information and belief, to avoid the serious consequences set forth above, it is essential, just and proper and appropriate for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable, and immediate injury to such policies, to the public interest, and to the employees involved herein, and in accordance with the purposes of 10(l) of the Act that, pending final resolution of the proper assignment of the brick paving

work, Respondent be enjoined and restrained as herein prayed.

**ANSWER:  Laborers' Local 118 denies the allegations in paragraph 11.**

**WHEREFORE,** Respondent, Laborers' Local 118 moves that this Petition be dismissed as lacking merit and in violation the Union's Constitutional Right of Free Speech and asks for legal fees and costs incurred in defending this action.

                Respectfully Submitted,


By:  s/Marc M. Pekay
     MARC M. PEKAY

MARC M. PEKAY, P.C.
30 N. LaSalle Street
Suite 2426
Chicago, IL 60602
(312) 606-0980

9